UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERICKA MARIE TRIFILETTI,

                Plaintiff,

v.                                                   1:14-CV-1427
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.          BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   ELIZABETH ROTHSTEIN, ESQ.
  Counsel for Defendant                     SUSAN J. REISS, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 16.) This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Ericka Marie Trifiletti ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 15.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 1, 1982. (T. 128.) She completed four years of college. (T. 155.) Generally, Plaintiff's alleged disability consists of depression, anxiety, attention deficit disorder ("ADHD"), and Hepatitis C. (T. 154.) Her alleged disability onset date is September 30, 2008. (T. 58.) Her date last insured is December 31, 2013. (*Id.*) She previously worked as a computer programmer for New York State Department of Tax and Finance and as a fast food worker. (T. 155.)

### B. Procedural History

On November 4, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 128.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 6, 2013, Plaintiff appeared before the ALJ, Dale Black-Pennington. (T. 30-57.) On April 8, 2013, ALJ Black-Pennington issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-29.) On September 24, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-25.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since September 30, 2008. (T. 15.) Second, the ALJ found that Plaintiff had the severe mental impairments of depression, anxiety, ADHD, and heroin addiction, in remission. (*Id.*) The ALJ determined that Plaintiff did not have a severe physical impairment. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but had the following non-exertional limitations:

> [Plaintiff was] able to understand, follow and complete only simple directions and instructions; able to perform simple routine tasks; not able to perform complex tasks; able to have only occasional superficial and transactional contact with co-workers; able to have rare superficial contact with the general public; require[ed] an independent or small group setting of five or fewer employees; and require[ed] a fixed work schedule.

(T. 17-18.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because, 1) the ALJ failed to weigh the opinion of a treating physician in accordance with the Regulations, 2) the ALJ gave "significant" or

3

"substantial" weight to all opinion evidence, despite conflicting limitations and 3) failed to recognize the opinion of George Hughes, M.D. (Dkt. No. 13 at 7-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence. (*Id.* at 12-14.) Third, and lastly, Plaintiff argues the ALJ's step five finding was not supported by substantial evidence. (*Id.* at 14.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 15 at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 10-12.) Third, and lastly, Defendant argues the ALJ properly found Plaintiff could perform other work. (*Id.* at 12-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

4

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's Analysis of the Medical Sources in the Record

#### i. Treating Physician, Rahim Dhanani, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Dr. Dhanani was a physician with Family Medical Group and began treating Plaintiff in August of 2011. (T. 256.) On January 18, 2013, Dr. Dhanani completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (T. 328-333.) Therein, he opined Plaintiff could continuously lift 21 to 50 pounds and could frequently lift 51 to 100 pounds. (T. 328.) He opined Plaintiff could continuously carry 21 to 50 pounds and could occasionally carry 51 to 100 pounds. (*Id.*) Dr. Dhanani opined Plaintiff had no limitations on her ability to sit, stand, or walk. (T. 329.)

In terms of non-exertional impairments, Dr. Dhanani opined Plaintiff could continuously: reach overhead, reach in all other directions, feel, push, and pull with both upper extremities. (T. 330.) Dr. Dhanani opined Plaintiff could occasionally handle and finger with her right hand. (*Id.*) He opined Plaintiff could frequently handle and finger with her left hand. (*Id.*) Dr. Dhanani opined Plaintiff had no limitations in her ability to: climb stairs and ramps; climb ladders or scaffolds; balance; stoop; kneel; crouch; or crawl. (T. 331.) Dr. Dhanani opined Plaintiff had no environmental limitations. (T. 332.)

The ALJ afforded Dr. Dhanani's medical source statement "substantial weight." (T. 23.) The ALJ reasoned Dr. Dhanani's opinion was consistent with objective

7

evidence in the record, "except there [was] no evidence that would limit [Plaintiff's] ability to use her right hands to handle and finger." (*Id.*)

Plaintiff argues the ALJ should have afforded Dr. Dhanani's opinion controlling weight because there was no substantial evidence to the contrary. (Dkt. No. 13 at 8 [Pl.'s Mem. of Law].) Plaintiff specifically argues the ALJ failed to provide evidence to support his conclusion regarding Plaintiff's manipulative limitations and contends Plaintiff's manipulative limitations are "well-supported" by the record. (*Id.* at 9.)

Dr. Dhanani was the only treating source to opine Plaintiff had limitations in her ability to handle and finger with her right hand. Plaintiff argues the limitations are supported by Dr. Dhanani's, and other treating providers', notations; however, the evidence in the record supplied by Plaintiff merely indicated that Plaintiff had a history of carpal tunnel syndrome. (Dkt. No. 13 at 9 [Pl.'s Mem. of Law].)[1] The treatment records cited by Plaintiff do not indicate that Plaintiff complained of pain due to carpal tunnel, sought treatment for her carpal tunnel, or had limitations due to her carpal tunnel syndrome.

The ALJ assessed Plaintiff's carpal tunnel syndrome and substantial evidence supported the ALJ's ultimate determination that Plaintiff had no limitations in handling and fingering due to her carpal tunnel syndrome. In his step two determination finding Plaintiff had no physical severe impairments, the ALJ relied in part on the physical

---

[1] The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). Plaintiff does not argue the ALJ erred in his step two analysis.

examination by consultative examiner, Joseph Prezio, M.D., which indicated Plaintiff's fine motor activity and finger dexterity were intact and her grip strength was 5/5 bilaterally. (T. 16.) Plaintiff's other treating physician, George Hughes, M.D., opined Plaintiff had no limitations in her ability to use her hands for handling and fingering. (T. 393.) Therefore, the objective medical record did not support manipulative limitations.

In addition, Plaintiff's testimony did not support limitations due to carpal tunnel syndrome. Plaintiff did not claim disability due to carpal tunnel syndrome. (T. 154.) During the hearing the ALJ asked Plaintiff if she had normal use of her hands, to which Plaintiff replied she did. (T. 44-45.) Therefore, the ALJ was proper in her assertion that the record failed to contain evidence to support Dr. Dhanani's limitations regarding Plaintiff's ability to handle and finger. Substantial evidence, namely Dr. Prezio and Dr. Hughes's opinions as well as Plaintiff's own testimony, supported the ALJ's determination that Plaintiff had no limitations in the use of her hands.

Plaintiff further argues that the ALJ erred in her assessment of Dr. Dhanani's opinion because the ALJ "fail[ed] to so much as mention [the] required factors" for evaluating the opinion of a treating source. (Dkt. No. 13 at 9 [Pl.'s Mem. of Law].) The ALJ did in fact mention the necessary Regulations, 20 C.F.R. §§ 404.1527, 416.927 and SSR 96-2p, used to evaluate a treating source's opinion. (T. 18.) Therefore, contrary to Plaintiff's assertion, the ALJ did mention the required factors.

Moreover, the ALJ's reasoning for affording Dr. Dhanai's opinion substantial weight was clear. Where an ALJ's reasoning and adherence to the Regulations was clear, she was not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged

9

ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). The ALJ concluded Dr. Dhanani's physical limitations, except those regarding Plaintiff's ability to use her hands, were consistent with objective evidence and the ALJ afforded his opinion "substantial weight." (T. 22.) For the reasons stated herein, the ALJ properly afforded Dr. Dhanani's medical opinion substantial weight and properly discounted Dr. Dhanani's limitations regarding Plaintiff's hands because there was no evidence in the record to support such limitations.

### ii.    Treating Physician, George B. Hughes, M.D.

On February 5, 2013, Dr. Hughes completed a physical and a mental Medical Source Statement of Ability to Do Work-Related Activities. (T. 391-399.)[2] Regarding Plaintiff's physical abilities, Dr. Hughes opined Plaintiff could frequently lift and carry up to 20 pounds, occasionally lift and carry 21 to 50 pounds, and could never lift and carry 51 to 100 pounds. (T. 391.) Dr. Hughes opined Plaintiff could walk for one hour at a time, stand for two hours at a time, and sit for three hours at a time without interruption. (T. 392.) Dr. Hughes opined Plaintiff could sit, stand, and walk for six hours total each in an eight hour workday. (*Id.*) Dr. Hughes opined Plaintiff could frequently reach overhead and in all directions with both hands. (T. 393.) He opined Plaintiff could continuously handle, finger, feel, push and pull with both hands. (*Id.*) Dr. Hughes opined Plaintiff could continuously: climb stairs and ramps; climb ladders or scaffolds;

---

[2]    It appears from the record that Dr. Hughes treated Plaintiff for her opioid dependence, but was not her primary care physician. (T. 290.) Treatment notations from Dr. Hughes include only two notations dated September 28, 2011 and October 27, 2011. (T. 290, 288.) Records from Dr. Hughes also contain a "medication list." (T. 286.) Other notations in Plaintiff's medical record reference Dr. Hughes as the prescribing Plaintiff Subozone for her opioid dependence. (T. 339, 345, 351, 357, 364.)

10

balance; stoop; kneel; crouch; and crawl.  (T. 394.)  Dr. Hughes opined Plaintiff could operate a motor vehicle and handle humidity and wetness.  (T. 395.)  He opined Plaintiff could frequently tolerate exposure to moving mechanical parts and vibrations.  (*Id.*)  He opined Plaintiff could occasionally tolerate exposure to unprotected heights, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat.  (*Id.*)

Dr. Hughes completed a mental medical source statement for Plaintiff.  Therein, he opined Plaintiff had "moderate" restrictions for the following work-related mental activities: understanding and remembering simple instructions; carrying out simple instructions; ability to make judgments on simple work-related decisions; understanding and remembering complex instructions; and ability to make judgments on complex work-related decisions.  (T. 397-399.)  The form completed by Dr. Hughes defined the term "moderate" as "more than a slight limitations in this area, but the individual is still able to function satisfactorily."  (T. 397.)  Therefore, a "moderate" limitation in the area mental activities would not prevent Plaintiff from performing the specific activities outlined above.

Plaintiff argues the ALJ failed to weigh or analyze Dr. Hughes's medical opinions.  (Dkt. No. 9 at 9-10 [Pl.'s Mem. of Law].)  Defendant counters, and this Court agrees, that the ALJ did not fail to weigh Dr. Hughes's opinion, but instead the ALJ committed a typographical error.  (Dkt. No. 15 at 7 [Def.'s Mem. of Law].)

In her decision the ALJ summarized Dr. Hughes's physical and mental medical source statements.  (T. 22.)  In the paragraph immediately after  her discussion of the Dr. Hughes's statement, the ALJ stated she afforded "substantial weight to the opinion of Dr. Bajpayi since his opinion is consistent with the objective evidence in the record

11

except there is no evidence that would limit [Plaintiff's] ability to lift and carry." (*Id.*) The ALJ was clearly referring to Dr. Hughes's medical opinion in this statement.

First, the ALJ's weight determination came directly after her discussion of Dr. Hughes's opinion, indicating she was assessing the weight to be given to his opinion. Second, the ALJ refers to the weight limitations imposed in the medical source statement in her weight analysis. Dr. Bajpayi did not provide a physical medical source statement, but Dr. Hughes did; therefore indicating she was referring to Dr. Hughes's statement. Third, the ALJ discussed Dr. Bajpayi's opinion, and afforded that opinion weight, elsewhere in her decision. Therefore, the ALJ clearly made a typographical error and she afforded "substantial weight" to the opinion of Dr. Hughes's.

### iii. The ALJ's Evaluation of Opinion Evidence

The ALJ has the duty to resolve medical evidentiary conflicts. *Richardson*, 402 U.S. at 399. Here, Plaintiff argues the ALJ erred in her overall evaluation of the opinion evidence because the opinions "significantly" varied and required a more "detailed and nuanced analysis" than the ALJ provided. (Dkt. No. 13 at 10 [Pl.'s Mem. of Law].)

First, the physical limitations imposed by various medical sources varied only slightly. The mental limitations imposed by Plaintiff's treating sources differed in one specific area only, and varied only slightly overall from the limitations imposed by the psychiatric consultative examiner. The variations in limitations imposed by Plaintiff's treating physicians was not as "significant" as Plaintiff alleges.

Here, Plaintiff's medical record was diminutive; however, her treating providers supplied medical source statements regarding Plaintiff's physical abilities. The record also contained a physical medical source statement by a consultative examiner, Dr.

Prezio. The ALJ thoroughly discussed these medical source statements in her decision. Plaintiff's physical limitations, as opined by her doctors and consultative examiner, vary only slightly. Dr. Dhanani opined Plaintiff could continuously lift and carry up to 50 pounds, could frequently lift up to 100 pounds, and could occasionally carry up to 100 pounds. (T. 328.) Dr. Hughes opined Plaintiff could frequently lift and carry up to 20 pounds, occasionally lift and carry 21 to 50 pounds, and could never lift and carry 51 to 100 pounds. (T. 391.) Dr. Prezio opined Plaintiff had no physical limitations. (T. 301.) The ALJ ultimately relied on Dr. Dhanani and Dr. Prezio's opinions regarding Plaintiff's exertional abilities, which support the RFC determination that Plaintiff had no limitations in her ability to lift and carry.

Dr. Hughes opined that Plaintiff had stricter limitations on her ability to sit, stand, and walk for one period at a time than the limitations imposed by Dr. Dhanani; however, both opinions indicate that Plaintiff could perform the sitting, standing, and walking requirements of a full range of heavy, medium, light, and sedentary work. (T. 329, 392), *see* 20 C.F.R. §§ 404.1567, 416.967. Both doctors opined Plaintiff had no postural limitations. (T. 331, 394.) Dr. Prezio's opinion that Plaintiff had no physical limitations aligned with Dr. Dhanani's opinion that Plaintiff had no limitations on her ability to sit, stand, and walk. Dr. Hughes and Dr. Dhanani's opinions concerning Plaintiff's ability to sit, stand, and walk may be slightly inconsistent with each other; however, neither opinion was inconsistent with the demands to perform a full range of work under the Regulations. See 20 C.F.R. §§ 404.1567, 416.967. Therefore, the opinions of Drs. Hughes, Dhanani, and Prezio are more consistent than not, and the ALJ's physical RFC determination was supported by substantial evidence in the record.

13

Second, Plaintiff's argument circles back to her contention that the ALJ failed to properly evaluation Plaintiff's ability to use her hands. (Dkt. No. 13 at 11 [Pl.'s Mem. of Law].) For the reasons already stated in this recommendation at Part IV.A.i.-ii., the ALJ did not err in his evaluation of Plaintiff's ability to use her hands.

The ALJ also properly evaluated the medical source statements regarding Plaintiff's mental limitations and her mental RFC determination was supported by substantial evidence. Plaintiff's treating physicians, Dr. Hughes and Dr. Bajpayi, completed Medical Source Statement of Ability to Do Work-Related Activities (Mental). (T. 334-336, 397-399.) Both doctors opined Plaintiff had "moderate" difficulties in the following: ability to understand and remember simple instructions; ability to carry out simple instructions; ability to make judgments on simple work-related decisions; ability to understand and remember complex instructions; and ability to make judgements on complex work related decisions. (T. 334, 397.) However, the opinions differ on Plaintiff's ability to carry out complex instructions. Dr. Bajpayi opined Plaintiff had a "marked" limitation in her ability to carry out complex instructions and Dr. Hughes opined Plaintiff had a "moderate" limitation in her ability to carry out complex instructions. (*Id.*)[3]

Psychiatric consultative examiner, Brett Hartman, Psy.D., opined Plaintiff was capable of following and understanding simple directions. (T. 296.) Dr. Hartman opined Plaintiff had a "fair ability" to learn new tasks, she had "mild" attention and concentration impairment, she had "moderate" difficulty making appropriate decisions, she had "mild

---

[3] "Marked" is defined as "[t]here is a serious limitation in this area. There is a substantial loss in the ability to effectively function."

to moderate" problems relating adequately with others, she had "moderate" problems dealing appropriately with the normal stressors of life.  (*Id.*)

The ALJ afforded Dr. Hughes's opinion "substantial weight," Dr. Bajpayi's opinion "substantial weight," and Dr. Hartman's opinion "significant weight."  (T. 21-22.)  The ALJ reasoned that the opinions were consistent with objective evidence.  (T. 21-22.)  As outlined above, the opinions were generally consistent with each other.  Any variation was discussed by the ALJ.  (T. 21-22.)  Further, neither a "moderate" nor "marked" limitation in the ability to carry out complex instructions was inconsistent with the ALJ's RFC determination.  The RFC limits Plaintiff to "only" simple directions and instructions.  (T. 17.)  Overall, the ALJ's mental RFC determination was supported by substantial evidence in the record, and outlined herein, because the ALJ properly relied on the medical opinions of Plaintiff's treating sources and Dr. Hartman.

Plaintiff next argues the ALJ's "significant drafting errors . . . make it very difficult to understand the ALJ's decision."  (Dkt. No. 13 at 11 [Pl.'s Mem. of Law].)  Specifically, Plaintiff highlights the ALJ's discussion of Dr. Bajpayi's opinion.  (*Id.* at 11.)  To be sure, the ALJ erroneously stated that Dr. Bajpayi found that Plaintiff had a "moderate" limitation in her ability to carrying our complex instructions.  (T. 22.)  However, further on in her decision the ALJ properly stated Dr. Bajpayi found that Plaintiff had a "marked" limitation in her ability to carrying out complex instructions.  (*Id.*)  The ALJ obviously made a drafting error in her decision; however, the error was not "significant" nor did it cause the ALJ's decision to be unclear.  Further, as Defendant asserts, any misstatement regarding Dr. Bajpayi's assessment of Plaintiff's ability to carry out complex instructions was of no significance because the ALJ's RFC limited Plaintiff to

15

simple work. (Dkt. No. 15 at 8-9 [Def.'s Mem. of Law].) Therefore, the ALJ's drafting errors where not so egregious or numerous as to make her rationale unfathomable or her decision incomprehensible.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and

16

> aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely credible. (T. 19.) In making her credibility determination, the ALJ discussed objective medical evidence in Plaintiff's record. Also, in making her credibility determination, the ALJ summarized Plaintiff's testimony, the ALJ discussed Plaintiff's impairments and symptoms, the ALJ discussed Plaintiff's medical treatment, and the ALJ discussed Plaintiff's activities of daily living. (T. 18-21.)

Plaintiff argues the ALJ "engaged in precisely the kind of boilerplate analysis courts in the Second Circuit have admonished and reversed in the past." (Dkt. No. 13 at 13 [Pl.'s Mem. of Law].) However, here, in making a credibility determination the ALJ did not simply make a conclusory statement, nor an improper "three-sentence summary" of Plaintiff's testimony. *See Sanders ex rel. C.O. v. Astrue*, No. 12-CV-6179, 2013 WL 1004609, at *6 (W.D.N.Y. Mar. 13, 2013) (holding the ALJ's decision failed to address the requirements of the Regulations requiring him to evaluate plaintiff's

17

testimony). The ALJ thoroughly summarized Plaintiff's testimony (five paragraphs), and further, the ALJ properly followed the factors outlined in the Regulations in making her credibility determination. (T. 18-19.) As stated above, in accordance with the Regulations, the ALJ discussed Plaintiff's symptoms, her medical treatment, and her activities of daily living. The ALJ's credibility analysis was far from a "boilerplate" credibility analysis. The ALJ thoroughly summarized Plaintiff's testimony and properly adhered to the Regulations in his analysis.

### C. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Here, the ALJ determined Plaintiff was unable to perform her past relevant work. The ALJ called on the assistance of a vocational expert ("VE") during the hearing to testify whether there were jobs that existed in significant numbers in the national economy a person with Plaintiff's age, education, and RFC could perform. (T. 49-55.) The VE testified that someone with Plaintiff's age, education, and RFC could perform

work as a janitor (DOT 381.687-014) and housekeeper (DOT 323.687-014). (T. 53.) The ALJ relied on the VE testimony in making his step five determination.

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     January 22, 2016                          /s/ Bill Carter
                                                     William B. Mitchell Carter
                                                     U.S. Magistrate Judge